IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> AN APPLE IPHONE WITH CALLER NUMBER ) <br> 770-865-1487 AND AN APPLE IPHONE WITH ) <br> CALLER NUMBER 470-258-7595 ) | Case No. 6:25cr272 |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Special Agent Kimbrell C. Dodder, Jr., being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of two Apple iPhones (described in Attachment A) which are currently in law enforcement possession, and the extraction from those cellphones of electronically stored information described in Attachment B.

2. I am an investigative or law enforcement officer of the United States within the meaning of 21 U.S.C. § 878. I have been a DEA Special Agent since October 2015. I received 19 weeks of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. Following graduation from the DEA Academy, I have been assigned to the offices in Jackson, Mississippi, Atlanta, Georgia, and Greenville, South Carolina. Prior to my employment as a Special Agent with the DEA, I was employed as a narcotics agent by the Mississippi Bureau of Narcotics for approximately eight years.

3. I have written and submitted to courts numerous affidavits in support of search warrants, pen registers, Title-III wire intercepts, and electronic tracking device (ETD) warrants. I

1

have served as the lead case agent in numerous wiretap investigations. I am familiar with the terminology and distribution methods used by drug traffickers, as well as the methods of packaging, transporting, and ingesting numerous types of controlled substances. I have received training, both formal and informal, in the investigation of violations of controlled substance offenses, including several schools regarding general narcotics investigation. I have participated in the investigation, arrest, and prosecution of numerous drug traffickers. During my law enforcement career, I have participated in investigations of narcotics trafficking, money laundering, complex conspiracies, and among other things, have conducted or participated in surveillances, the execution of search warrants, and debriefings of informants.

    4.      Through my training, education, and experience, I have become familiar with the manner in which narcotics traffickers and money launderers conduct their operations, including but not limited to, their methods of importing and distributing controlled substances, their use of cellular telephones (including using multiple phones at once to communicate with different members of a drug organization, and the frequent use of new/replacement phones), their use of counter surveillance techniques, and their use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions. Additionally, while involved in narcotics trafficking investigations, I have communicated with other federal, state, and local law enforcement personnel who specialize or have expertise in this area.

    5.      As part of the aforementioned criminal investigations, I have training and experience dealing with electronic evidence and have prepared multiple search warrant affidavits supporting warrants for information maintained by telephone and internet service providers, authorizing forensic searches of cellular telephones, computers, and other electronic devices. I know that drug dealers often keep photographs, messages, and other records of their drug

distribution efforts on cellular telephones, computers, and electronic devices. And I know through this investigation, in particular, that the target subjects **Selena PALACIOS** and **Freddie GARCIA** have used cellular telephones to further their drug trafficking activities.

6. This affidavit is intended to show that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

### IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7. The electronic devices to be searched are:

    a. **TARGET DEVICE #1**: an Apple iPhone with phone number 770-865-1487, which was used by GARCIA and located in the master bedroom of GARCIA and PALACIOS's residence and is now contained in DEA Evidence Bag S001524902.

    b. **TARGET DEVICE #2**: an Apple iPhone with phone number 470-258-7595, which was used by PALACIOS and located in the GARCIA's pocket and is now contained in DEA Evidence Bag S001524901.

8. These devices will be hereinafter collectively referred to as the "**TARGET DEVICES**." The **TARGET DEVICES** are in secure storage with the DEA in the District of South Carolina.

9. The applied-for warrants would authorize the forensic examinations of the **TARGET DEVICES** for the purpose of identifying the electronically stored data described in Attachment B.

### BACKGROUND INVESTIGATION

9. In September 2021, Tonny FREEMAN ("FREEMAN") was intercepted over wire communications discussing kilogram quantities of cocaine during a DEA Atlanta investigation. As

3

part of DEA Atlanta's investigation, law enforcement seized approximately 20 kilograms of cocaine from a drug courier in the Atlanta area who had been intercepted discussing drug transactions with FREEMAN on multiple occasions. DEA Greenville then began investigating FREEMAN and confirmed that FREEMAN was distributing cocaine and heroin in the District of South Carolina. Law enforcement then used a multi-faceted approach to develop evidence of FREEMAN's drug distribution operation. These methods included, but were not limited to, physical surveillance, interviews with sources of information, and the employment of a confidential source. Additionally, law enforcement obtained authorization and initiated the use of electronic surveillance tools such as geo-location data and cell-site simulators.

## PROBABLE CAUSE

10.     On April 5, 2022, the Honorable Henry M. Herlong, Jr., Senior United States District Judge for the District of South Carolina, signed an order authorizing agents to begin intercepting wire communications over 470-573-4665 (TT#1) utilized by FREEMAN. During the intercepts occurring over TT#1, agents intercepted Selena PALACIOS, utilizing **TARGET DEVICE #2** numerous times, during which FREEMAN would inquire about PALACIOS supplying him with cocaine.

11.     On April 19, 2022, agents intercepted an outgoing call from TT#1, utilized by FREEMAN, to PALACIOS, utilizing **TARGET DEVICE #2**. A portion of the call went as follows:

> FREEMAN: "Ask 'Quiet Man' do he feel like riding or do he want me to come down there?"
>
> PALACIOS: "For all of 'em?"
>
> FREEMAN: "I thought you mean all of 'em?"

4

PALACIOS: "It was ten of 'em."

FREEMAN: "He got ten?"

PALACIOS: "Um-hum – oh, for Saturday?"

FREEMAN: "He got ten?"

PALACIOS: "Um-hum. Or you want five?"

FREEMAN: "I don't want but five but if he'll bring 'em to me, I'll take ten."

PALACIOS: "All right, let me –"

FREEMAN: "Twenty, twenty-five, I'll take 'em. Cause I ain't, you know, I don't want but five, but, to make the trip worthwhile, and he'll make more money, I'll take the ten."

PALACIOS: "The ten? Okay, let me sure he got 'em."

FREEMAN: "You know my main thing is everything a'ight."

PALACIOS: "Um-hum, yeah. Nah, he's fine when he was – they're good as fuck! When I cut 'em I was like, 'Let me, let me ask him.' I said, 'Let me see what he says.' But since we hadn't really talked about it – yeah, let me make sure he can take 'em to you. Or if anything, I'll let you know if you have to come down. Cause you know, they're picky."

12. Based on my training, experience, and the investigation to date, I believe FREEMAN asked PALACIOS to supply him with five units of drugs ("I don't want but five"). FREEMAN said if the drugs were delivered to him, he would take 10 units of drugs ("if he'll bring 'em to me, I'll take ten"). PALACIOS then confirmed that FREEMAN wanted 10 units of drugs and said she would contact the drug source of supply to verify if the drugs were still available ("The ten? Okay, let me make sure he got 'em."). FREEMAN stated he would pay $25,000 per

5

unit of drug ("Twenty-five, I'll take 'em"). PALACIOS said she would let FREEMAN know if the drugs could be delivered ("let me make sure he can take 'em to you") or if FREEMAN would have to come get the drugs ("I'll let you know if you have to come down").

13. Subsequently, on May 4, 2022, Judge Herlong signed an order authorizing agents to continue intercepting wire communications over TT#1 and begin intercepting wire communications occurring over **TARGET DEVICE #2**.

14. On May 26, 2022, agents intercepted an outgoing call from TT#1, utilized by FREEMAN, to PALACIOS, utilizing **TARGET DEVICE #2**. A relevant portion of the call went as follows:

> FREEMAN: "What's up, baby?"
>
> PALACIOS: "How you doing?"
>
> FREEMAN: "Everything all right, coast clear?"
>
> PALACIOS: "No."
>
> FREEMAN: "Nuh-uh?"
>
> PALACIOS: "Yeah."
>
> FREEMAN: "Whatcha'll working on?"
>
> PALACIOS: "Uh, 2-4."
>
> FREEMAN: "Huh?"
>
> PALACIOS: "I'm trying to – I'm trying to go look at them today. That way you know, I can make sure."
>
> FREEMAN: "Uh-huh."
>
> PALACIOS: "'Cuz, you know, I don't want no fuck ups. That's why I wanted to see how many you wanted to see. You know."

6

>    FREEMAN: "You gotta see what's happening first."

15. Based on my training, experience, and the investigation to date, I believe FREEMAN asked if PALACIOS was in possession of kilograms of cocaine ("Everything all right, coast clear?"). PALACIOS said she wasn't ("no") but she could obtain cocaine for $24,000 per kilogram ("Uh, 2-4") and was going to check the quality of the cocaine ("I'm trying to go look at them today.").

16. Following this conversation, on May 28, 2022, agents intercepted a conversation between PALACIOS, utilizing **TARGET DEVICE #2,** and GARCIA, utilizing **TARGET DEVICE #1,** during which PALACIOS informed GARCIA that she had informed FREEMAN that they (GARCIA and PALACIOS) were 40 minutes from FREEMAN's location. GARCIA asked PALACIOS if they were going to FREEMAN's new residence, and PALACIOS stated that she believed so. GARCIA then asked PALACIOS if FREEMAN preferred if they brought one or two cars to FREEMAN's residence, as GARCIA and PALACIOS were driving separately.

17. On the same day, agents conducted surveillance of FREEMAN, PALACIOS, and GARCIA as they met at a restaurant near FREEMAN's residence (103 Finley Avenue, Greer, South Carolina). Agents observed PALACIOS get into a vehicle driven by GARCIA and drive towards FREEMAN's residence. A short time later, agents observed the vehicle driven by GARCIA leave FREEMAN's residence and return to the restaurant. PALACIOS then exited the vehicle and returned to her vehicle. Both PALACIOS and GARCIA then traveled back to Georgia.

18. Later that day during the evening hours of May 28, 2022, agents intercepted a conversation between FREEMAN, utilizing TT#1, and PALACIOS, utilizing **TARGET DEVICE #2.** A relevant portion of the call went as follows:

>    PALACIOS: "Did you get my message?"

7

FREEMAN: "Huh?"

PALACIOS: "I said, did you get my message?"

FREEMAN: "Uh-huh."

PALACIOS: "Um, I was telling you that if you needed them by tonight or can I go early, early in the morning, like around four."

FREEMAN: "Okay, in the morning it'll be fine."

PALACIOS: "In the morning it's fine?"

FREEMAN: "Yeah."

PALACIOS: "Okay, alright, so I'll be there at that time."

FREEMAN: "Okay."

PALACIOS: "Okay. Uh, but did you see my message that there was only five? Is that okay?"

FREEMAN: "Okay."

PALACIOS: "Alright."

FREEMAN: "They the same?"

PALACIOS: "Yeah, the same thing."

19.     Based on my training, experience, and the investigation to date, I believe PALACIOS told FREEMAN that five additional kilograms of cocaine were available for sale ("there was only five") and FREEMAN confirmed that it was ok to deliver the five kilograms on the morning of May 29, 2022 (PALACIOS: "In the morning it's fine?"; FREEMAN: "Yeah.").

20.     On May 29, 2022, at approximately 5:34 AM, agents intercepted a conversation between PALACIOS, using **TARGET DEVICE #2**, and GARCIA, using **TARGET DEVICE #1**. During the call, PALACIOS asked if GARCIA knew how to get to FREEMAN's residence,

8

and GARCIA said he thought it was all straight. PALACIOS and GARCIA talked about getting to the same place where they parked the day before. GARCIA said he remembered it was all straight, but that FREEMAN took a few turns just to make sure they were not being followed. GARCIA said that FREEMAN drove in a square on purpose. GARCIA then said it was on the same street as the Walmart. PALACIOS said that she saw the address yesterday but had already forgotten it and only remembered the number. GARCIA said he knew how to get there and talked about the turns they had taken the day before.

21. On May 29, 2022, at approximately 6:08 AM, agents intercepted a conversation between FREEMAN, utilizing TT#1, and PALACIOS, utilizing **TARGET DEVICE #2**. A relevant portion of the call went as follows:

> FREEMAN: "How you doing?"
>
> PALACIOS: "I'm about 15 to 20. Same place?"
>
> FREEMAN: "Uh-huh, you know how to get there?"

22. Less than 20 minutes later, at approximately 6:25 AM, an agent observed two vehicles associated with PALACIOS and GARCIA at a restaurant near FREEMAN's residence. The agent then observed GARCIA exit one vehicle and enter the other vehicle, which was being driven by PALACIOS. The vehicle then proceeded to FREEMAN's residence. A short time later, the vehicle returned to the restaurant and then both vehicles left the restaurant.

23. On May 31, 2022, agents conducted a search warrant at FREEMAN's residence and seized approximately nine kilograms of cocaine.

24. During a proffer interview with FREEMAN in June 2022, FREEMAN stated that PALACIOS and GARCIA had delivered four kilograms of cocaine to him on May 28, 2022, and five kilograms of cocaine to him on May 29, 2022.

25. On July 20, 2022, a federal grand jury in the District of South Carolina returned a sealed indictment charging PALACIOS and GARCIA with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846, and an arrest warrant pursuant to this indictment was subsequently issued for PALACIOS and GARCIA.

26. On July 25, 2022, DEA Atlanta arrived at GARCIA and PALACIOS's residence located at 1451 Indian Way NW, Lilburn, Georgia, and agents knocked on the door. PALACIOS opened the door and was placed under arrest. Agents then entered the residence and located GARCIA in the master bedroom of the residence, and GARCIA was then placed under arrest. On the nightstand in the master bedroom, agents observed **TARGET DEVICE #1**. During a search of GARCIA, agents discovered **TARGET DEVICE #2** in GARCIA's pants pocket.

27. On July 25, 2022, DEA Atlanta mailed the **TARGET DEVICES** to the DEA Greenville office. On July 26, 2022, DEA Greenville received the devices, which were then placed into secure storage.

## STATUS OF THE TARGET DEVICES

28. The **TARGET DEVICES** have been in DEA's custody since they were seized from PALACIOS and GARCIA on July 25, 2022, and have been in DEA Greenville's custody since July 26, 2022. From my training and experience, I know that the **TARGET DEVICES** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the **TARGET DEVICES** first came into the possession of law enforcement.

## DEVICE CAPABILITIES

29. Based on my training, experience, and research, I know that the **TARGET DEVICES** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media

player, GPS navigation device, device for sending and receiving emails and SMS messages, as well as an internet browser which allows a user to post text, pictures, and videos on various social media sites.

### ELECTRONIC STORAGE AND FORENSIC ANALYSIS

30. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

31. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET DEVICES** were used, the purpose of their use, who used them, and when. I respectfully submit that there is probable cause to believe forensic electronic evidence might be on the **TARGET DEVICES** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.

11

Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer operates. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

32. *Nature of examination.* Based on the foregoing, and consistent with Federal Rule of Criminal Procedure 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET DEVICES** consistent with the warrant and corresponding documents submitted in support thereof. The examination may require authorities to employ techniques, including but not limited to, computer-assisted scans of the entire medium that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

33. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises.

## CONCLUSION

30. I respectfully submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **TARGET DEVICES** described in Attachment A to seek the items described in Attachment B for evidence of violations of 21 U.S.C. §§ 841(a)(1) and 846.

This affidavit has been reviewed by AUSA Justin Holloway.

_____
Kimbrell C. Dodder, Jr.
Special Agent, DEA

Subscribed and sworn before me on August _15_, 2022, in Greenville, South Carolina.

_____
The Honorable Kevin F. McDonald
United States Magistrate Judge
District of South Carolina

## ATTACHMENT A

The property to be searched is:

a. **TARGET DEVICE #1**: an Apple iPhone with phone number 770-865-1487, which was used by GARCIA and located in the master bedroom of GARCIA and PALACIOS's residence and is now contained in DEA Evidence Bag S001524902.

b. **TARGET DEVICE #2**: an Apple iPhone with phone number 470-258-7595, which was used by PALACIOS and located in the GARCIA's pocket and is now contained in DEA Evidence Bag S001524901.

The **TARGET DEVICES** are currently located in secure storage with the DEA in the District of South Carolina. This warrant authorizes the forensic examination of the **TARGET DEVICES** for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All information and objects that constitute fruits, contraband, evidence, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (possession with intent to distribute and the distribution of controlled substances) and 21 U.S.C. § 846 (conspiracy to possess with intent to distribute and to distribute controlled substances) involving FREEMAN, PALACIOS, GARCIA, and/or other co-conspirators in the subject offenses, known and unknown, including the following:

a. Records of any type of communication with PALACIOS, GARCIA, and/or any other co-conspirator involved with criminal behavior. These include but are not limited to phone calls, voice messages, text messages, emails, secure and encrypted messages conducted through social media or mobile applications to include text, voice, and video messages.

b. Business and bank account information related to PALACIOS, GARCIA, an/or any other co-conspirators. These records include but are not limited to electronic documents, bank statements, money transfers, financial and business applications, ledgers, photographs, videos, and government records.

c. Photographs and videos (and the metadata associated with photos or videos denoting information such as the date, time, and location where a certain electronic file was created) of items associated with PALACIOS, GARCIA, any co-conspirators, and drug distribution.

d. Electronic GPS data denoting locations historically visited by the **TARGET DEVICES**.

e. Any and all records of property, both real and personal, owned or possessed by

PALACIOS or GARCIA.

f. Any records of the **TARGET DEVICES'** account information, and other financial records associated with the payment of fees with respect to the **TARGET DEVICES**.

g. Internet browsing history and all other information associated with the **TARGET DEVICES'** access and navigation of the internet.

h. Evidence of user attribution showing others who may have used or owned the **TARGET DEVICES** during the time the things or items described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

16